NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0150n.06
Filed: March 17, 2008

Case No. 07-3658

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| VAID HYZOTI,<br>LULJETA HYZOTI,<br>FJONA HYZOTI,<br>FJODI HYZOTI,<br><br>Petitioners,<br><br>v.<br><br>MICHAEL B. MUKASEY, Attorney<br>General,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ON PETITION FOR REVIEW<br>OF A DECISION OF THE<br>BOARD OF IMMIGRATION<br>APPEALS |

---

BEFORE: BOGGS, Chief Judge; BATCHELDER and GRIFFIN, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Petitioners[1] appeal the February 7, 2007, decision of the Board of Immigration Appeals ("BIA") denying their application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). Because we conclude that substantial evidence supports the BIA's determination that changed country conditions in Albania refuted any presumption that Petitioners had a well-founded fear of future persecution, we DENY the petition for review and AFFIRM the decision of the BIA.

I. BACKGROUND

---

[1]The lead petitioner, Vaid Hyzoti ("Hyzoti"), filed his application for asylum, on which his wife, Luljeta, daughter, Fjona, and son, Fjodi, are listed as derivatives. We will collectively refer to the family as "Petitioners."

Petitioners, a husband and wife and their two children, are citizens of Albania who came to the United States in November of 2000.[2] On December 18, 2000, Hyzoti, the lead petitioner, filed an application for asylum under INA § 208(a), claiming past persecution and a well-founded fear of future persecution on account of: (1) his political opinion, including his political party affiliation and support of the Albanian monarchy; and (2) his work as a journalist. He also sought withholding of removal under INA § 241(b)(3) and withholding under the CAT. Petitioners conceded that they were subject to removal under the INA.

Hyzoti worked mainly as a journalist in Albania, writing for several "right-wing" newspapers. He was also active in politics, first with the Albanian Democratic Party in the early 1990's, and then, beginning around 1993, with the pro-monarchy Legality Party. Hyzoti's wife worked as a notary public. In the asylum application and at the evidentiary hearing before an Immigration Judge ("IJ"), Petitioners supported their asylum application with allegations of several instances of abuse and ill-treatment.

First, Hyzoti claimed that on several occasions he was detained and physically assaulted by police because of his political affiliation. He also alleged that the newspaper for which he wrote fired him after he joined the Democratic Party. Hyzoti's wife claimed that she was suspended as a notary public because of her husband's political activities.

Next, Hyzoti alleged that government officials mistreated him because of newspaper columns he wrote. Most notably, Hyzoti claimed that in Kruje, Albania, the city in which Petitioners lived, the District Prosecutor and the Prosecutor's son physically beat him because of an article he wrote

---

[2]Vaid, Luljeta, and Fjodi entered the United States on non-immigrant visas on November 10, 2000. Fjona arrived two days later without inspection.

that was critical of the President of Albania. According to Hyzoti, when he filed charges against the two men, the District Prosecutor was simply transferred to another office, and the government took no other action to punish the District Prosecutor's conduct or to protect Hyzoti from further harassment.

Petitioners also detailed numerous threats they claim to have received from various people. Some of these threats were made in person by men carrying firearms; others were made over the phone or via letters. Primarily, these threats indicated an intention to kidnap or physically harm Fjona, and one in particular, from a man named Lutfi Kapa, resulted in at least some police action. Hyzoti conceded that some of these threats may have been because of his financial wealth and not his political activities or work as a journalist.

The IJ issued an oral decision on June 30, 2005, concluding that Hyzoti was not credible and that he had not adequately corroborated his claims. Furthermore, the IJ found that, even if Hyzoti were credible, his claims failed because he did not establish past persecution. Finally, the IJ determined that, even if Hyzoti had established past persecution, changed country conditions in Albania rebutted the presumption that he had a well-founded fear of future persecution. On February 7, 2007, the BIA — with some discussion of its own — adopted and affirmed the IJ's finding that Petitioners were not entitled to asylum because of the changed country conditions in Albania. The BIA also denied Petitioners' motion to remand, a decision not relevant to the disposition of this case. Petitioners timely appealed to this court the BIA's decision denying their application for asylum, withholding of removal, and relief under the CAT.

## II. STANDARD OF REVIEW

3

When "the [BIA] adopts the decision of the IJ in lieu of issuing its own opinion, we review the IJ's decision as the final agency decision." *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003); *see also* 8 C.F.R. § 1003.1(e)(4)(ii). Here, however, the BIA did not simply adopt the finding of the IJ, but rather adopted and affirmed — while also adding its own analysis — the IJ's conclusion regarding the changed country conditions in Albania. We therefore directly review the IJ's decision while considering the additional discussion of the BIA. *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005).

We utilize the substantial-evidence test to review the BIA's finding that an alien does not qualify as a refugee. *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004); *see also Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Using that test we deem factual findings "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), and we may not reverse the IJ or BIA simply because we would have decided the matter differently, *Mikhailevitch*, 146 F.3d at 388. We may reverse only if the petitioner's evidence compels a conclusion contrary to that of the IJ or BIA. *Elias-Zacarias*, 502 U.S. at 483-84 ("[T]o obtain judicial reversal of the BIA's determination, [the petitioner] must show that the evidence he presented was so compelling that no reasonable finder of fact could fail to find" in the petitioner's favor.).

### III. ANALYSIS

In denying Petitioners' application for asylum, the BIA specifically confined its decision to the changed country conditions in Albania. Because the BIA did not summarily affirm the IJ's decision, but added its own analysis, we review both the IJ's decision and the BIA's analysis to

4

determine whether substantial evidence supports the conclusion that because of the changed country conditions in Albania, Hyzoti does not have a well-founded fear of persecution.

**A. ASYLUM**

The Attorney General has delegated authority to the BIA and to IJs to determine if an alien qualifies as a refugee. *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (citing 8 U.S.C. § 1158(a) & (b)). That determination requires a two-step inquiry: (1) whether the applicant qualifies as a refugee as defined in 8 U.S.C. § 1101(a)(42); and (2) if so, whether the applicant merits the BIA's exercising discretion on his or her behalf. *Id*. (citing *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)).

A refugee is defined as "an alien who is unable or unwilling to return to his home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Elias-Zacarias*, 502 U.S. at 558 (quoting 8 U.S.C. § 1101(a)(42)(A)). As an applicant for asylum, Hyzoti must prove that he has suffered past persecution or has a well-founded fear of future persecution should he return to Albania. *Yu*, 364 F.3d at 703; *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994). If he satisfies his burden of establishing past persecution, he is entitled to a rebuttable presumption that he has a well-founded fear of future persecution. *See Mikhailevitch*, 146 F.3d at 389. The government may overcome that presumption "by establishing by a preponderance of the evidence that there is 'a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality.'" *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004) (quoting 8 C.F.R. § 208.13(b)(1)(i)(A)).

In deciding to deny Petitioners' application, the BIA stated:

5

> [E]ven if we were to assume that the [Petitioners] provided credible testimony and have established past persecution, we find that there has been a "fundamental change in circumstances" such that [Petitioners] no longer have a well-founded fear of persecution, or that their life or freedom would be threatened in Albania. *See* 8 C.F.R. §§ 1208.13(b)(1)(i)(A), 1208.16(b)(1)(i)(A).

Thus, in effect, the BIA simply assumed that Hyzoti suffered past persecution and afforded him the presumption of a well-founded fear of future persecution. We will likewise assume that Hyzoti did suffer past persecution, and determine whether substantial evidence supports the BIA's conclusion that changed country conditions in Albania rebut the presumption that Hyzoti has a well-founded fear of future persecution.

"It is the purview of the BIA . . . to determine the current conditions prevailing in a particular country." *Weng v. Mukasey*, No. 07-0866, 2007 U.S. App. LEXIS 29635 at *17 (6th Cir. Dec. 19, 2007) (unpublished) (citing *INS v. Ventura*, 537 U.S. 12, 16-18 (2002)). Both the IJ and the BIA cited the United States Department of State's *Profile of Asylum Claims and Country Conditions for Albania* (March 2004), to establish the following facts: Albania's human rights record has noticeably improved; individuals are able to exercise their political rights, generally free from violence and government interference; and recent elections were "the most transparent in Albania's short democratic history, with no police interference." Both the IJ and the BIA also cited the Department of State's *Albania: Country Reports on Human Rights Practices* (February 28, 2005), which states that "[u]nlike in previous years, physical violence was not used against journalists."

Although not conclusive, State Department reports "are generally the best source of information on conditions in foreign nations." *Mullai*, 385 F.3d at 639 (quoting *Kokaj v. Ashcroft*, 100 Fed. App'x 506, 508 (6th Cir. 2004)). In fact, "State Department reports on other countries are entitled to significant deference when assessing conditions there." *Koliada v. INS*, 259 F.3d 482,

6

487 (6th Cir. 2001). Moreover, we have determined that country conditions have changed in Albania and that political persecutions are no longer a significant problem. *See Prifti v. Gonzales*, No. 05-0918, 2005 U.S. App. LEXIS 25144 at *5-6 (6th Cir. Nov. 18, 2005) (unpublished) ("[D]espite the prevalence of crime and police corruption, 'there is virtually no evidence that individuals are targeted for mistreatment on political grounds.'"); *Gilaj*, 408 F.3d at 288 ("There is documentation in the record that suggests that conditions in Albania have changed in recent years."); *see also Lumaj v. Ashcroft*, 115 Fed. App'x 595, 598 (3d Cir. 2004) (finding that, after the fall of the communist regime, there is little evidence of religious or political persecution in Albania.).

Petitioners present virtually no facts or evidence to rebut the information in the State Department reports or to attack our precedents finding that country conditions have changed in Albania. Therefore, we find that substantial evidence supports the IJ's and BIA's conclusions that country conditions have changed in Albania such that Hyzoti does not have a well-founded fear of future persecution. Accordingly, we conclude that Petitioners do not qualify as refugees under 8 U.S.C. § 1101(a)(42)(A) and are not eligible for asylum.

## B. Withholding of Removal

An applicant seeking withholding of removal must satisfy a more stringent burden of proof than must an applicant for asylum. *Mikhailevitch*, 146 F.3d at 391 (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987)). In order to qualify for withholding of removal, Hyzoti must establish that there is a clear probability that he would be subjected to persecution if he were to return to Albania. *Id.* (internal citations omitted); *INS v. Stevic*, 467 U.S. 407, 429-30 (1987). We have concluded that substantial evidence supports the BIA's decision that because of changed country

conditions in Albania, Petitioners are ineligible for asylum. Therefore, *a fortiori*, they "cannot satisfy the more stringent standard for withholding of" removal. *Id*.

### C. Convention Against Torture

In order to establish entitlement for relief on his CAT claim, Hyzoti must prove "that it is more likely than not that [he] would be tortured if" removed to Albania. *Singh v. Ashcroft*, 398 F.3d 396, 404 (6th Cir. 2005) (citing *Pilica*, 388 F.3d at 951 (quoting 8 C.F.R. § 208.16(c)(2))). We have already decided that Hyzoti is not eligible for asylum because changed country conditions rebut the presumption that he has a well-founded fear of future persecution. Petitioners have put nothing in the record to persuade us that — more likely than not — Hyzoti will be tortured upon returning to Albania. Consequently, Petitioners are not entitled to relief under the CAT.

### IV. CONCLUSION

For the foregoing reasons, we **DENY** the petition for review and **AFFIRM** the decision of the BIA.